ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
OCT 19 2010
CLERK, U.S. DISTRICT COURT
By_____
   Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| ALICIA SEVELAND (FISHER), <br> PLAINTIFF, | § § § | |
| v. | § | CIVIL ACTION NO. 4:09-CV-470-Y |
| MICHAEL J. ASTRUE, <br> COMMISSIONER OF SOCIAL SECURITY, <br> DEFENDANT. | § § § § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### I. FINDINGS AND CONCLUSIONS

A.   Statement of the Case

Plaintiff Alicia Seveland (Fisher) ("Seveland") filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits[1] under Title II and supplemental security income ("SSI") benefits[2] under Title XVI of the Social Security Act ("SSA"). In April 2005, Seveland applied for disability insurance and SSI benefits alleging that she

---

[1] Seveland's insured status for disability insurance benefits expired on March 31, 2004. (Tr. 16.)

[2] With respect to applications for SSI, the first month for which SSI benefits can be paid is the month after the SSI application was filed regardless of how far back in time disability may extend. 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.335.

1

became disabled on January 1, 2003. (Transcript ("Tr.") 15, 49-51.) Her applications were denied initially and on reconsideration. (Tr. 15.) The ALJ held a hearing on October 3, 2007 (Tr. 15, 281-303) and issued a decision on March 28, 2008 that Seveland was not disabled (Tr. 15, 239-46). Seveland filed a written request for review (Tr. 15, 254-58), and the Appeals Council, on October 28, 2008, vacated the ALJ's decision and remanded the case for further proceedings (Tr. 15, 250-53). In its order of remand, the Appeals Council stated:

- The record is unclear regarding the nature and severity of the claimant's mental impairments. When the hearing was held on October 3, 2007, there was no evidence of the claimant's condition past December 15, 2005. Karen S. Kendall, Ph.D., a State Agency psychologist, said there was insufficient evidence to properly evaluate the claimant's mental impairments at the initial level. While the Council notes that the Title II claim was denied at Step 2 upon reconsideration, this was due to a date last insured issue. Since the claimant filed concurrent claims, updated information of her psychiatric condition is needed to assess her remaining functioning ability. . . .

. . . .

Upon remand the Administrative Law Judge will:

- Obtain additional evidence concerning the claimant's mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence. The additional evidence may include, if warranted and available, a consultative psychiatric examination with psychological testing and medical source statements about what the claimant can still do despite the impairments.

(Tr. 251-52 (internal citations omitted)).

The ALJ held a second hearing in January 2009 (Tr. 15, 304-25) and issued a decision on April 1, 2009 that Seveland was not disabled because she was capable of performing work that existed in significant numbers in the national economy (Tr. 12-26). Seveland filed a written request

for review, and the Appeals Council denied her request for review on June 26, 2009, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 7-11.)

B. Standard of Review

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern disability insurance and SSI benefits. *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. §§ 404.1520(d),

416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.

C. Issues

   1. Whether the ALJ erred in failing to develop the record relating to Seveland's mental impairments.

   2. Whether Seveland's case must be remanded for consideration of new and material evidence.

D. ALJ Decision

The ALJ, in his April 1, 2009 decision, found that Seveland had not engaged in any substantial gainful activity since January 1, 2003, the alleged onset date of Seveland's disability. (Tr. 21.) He further found that Seveland had "a history of Xanax and alcohol abuse, with remission alleged, with depression or bipolar disorder; and Rule/Out PTSD, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in" the Listing. (Tr. 16.) The ALJ then determined that Seveland had the residual functional capacity ("RFC") to "perform the nonexertional requirements of work activity, limited to jobs with incidental public contact, and with 1-2 step instructions" with no severe exertional limitations. (Tr. 22.) Based on this RFC assessment, the ALJ opined that Seveland was not able to perform her past relevant work (Tr. 23) but there were jobs that existed in significant numbers in the national economy that she could perform (Tr. 24-25). Consequently, the ALJ found Seveland was not disabled. (Tr. 25-26.)

E. Discussion

   1. Duty to Develop Record

The first issue is whether the ALJ erred in failing to develop the record relating to Seveland's mental impairments. Seveland argues that the ALJ failed to properly develop the record "because he failed to obtain further consultative evaluation of her mental impairments despite the fact her testimony and the opinions of the state agency doctors indicated that further evaluation was

5

necessary for a proper determination of disability." (Pl.'s Br. at 9.) Specifically, Seveland claims that the following evidence demonstrates that there was insufficient evidence in the record for the ALJ to make a proper determination of disability without ordering a consultative examination: (1) Karen Kendall, Ph.D. ("Kendall"), a state agency medical consultant ("SAMC"), indicated in a Psychiatric Review Technique Form ("PRTF") dated July 26, 2005 that she had insufficient evidence to assess Seveland's functional limitations (Pl.'s Br. at 9-10; see Tr. 183-95);[3] (2) Tom Shadid, Ph.D. ("Shadid"), another SAMC, indicated in a PRTF dated January 4, 2007, that he had insufficient evidence to make a determination of disability (Pl.'s Br. at 10-11; see Tr. 209-36); (3) Seveland testified at the first hearing before the ALJ on October 3, 2007 that she suffered from "problems with conflicts between her multiple personalities but was not certain if this problem had been actually diagnosed" and her "ex-husband kept her from attending the earlier examinations scheduled by the Social Security Administration" (Pl.'s Br. at 11; see Tr. 291-93, 298-88, see also Tr. 314-16); and (4) the Appeals Council's October 28, 2008 order remanding the cause to the ALJ noted that the record was "'unclear regarding the nature and severity of claimant's mental impairments'" and ordered the ALJ to "obtain 'additional evidence' concerning Ms. Seveland's mental impairments." (Pl.'s Br. at 11 (quoting Appeals Council's Oct. 28, 2008 order of remand); see Tr. 251-53).

---

[3] Kendall actually prepared two PRTFs, both dated July 26, 2005. In the first one, which assessed Seveland's condition through July 26, 2005, Kendall opined that Seveland was moderately restricted in her activities of daily living; had moderate difficulties in maintaining social functioning; and had mild difficulties in maintaining concentration, persistence, or pace. (Tr. 169, 179.) In reaching this opinion, Kendall noted that the only available medical evidence of record is Seveland's "one visit to CMCH" and that the "claimant's general fund of information is not well developed." (Tr. 181.) In the second one, which assessed Seveland's condition through March 31, 2004, Kendall indicated she had insufficient evidence on which to base an opinion. (Tr. 183-96.)

The Fifth Circuit imposes a duty on the ALJ to develop the facts relative to a claim for benefits fully and fairly. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). When the ALJ fails in this duty, he does not have before him sufficient facts on which to make an informed decision and his decision is not supported by substantial evidence. *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996); *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). The ALJ's duty to fully and fairly develop the record may impose a duty to order an examination of the plaintiff. *See Brock*, 84 F.3d at 728. "An ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination." *Id.*; *see* 20 C.F.R. §§ 404.1517, 416.917. "A consultative evaluation becomes 'necessary' only when the claimant presents evidence sufficient to raise suspicion concerning a non-exertional impairment." *Id.*; *see Haywood v. Sullivan*, 888 F.2d 1463, 1472 (5th Cir. 1989). "Nonetheless, reversal is appropriate only if the claimant shows that he was prejudiced as a result of the insufficient record." *Hudspeth v. Astrue*, No. 4:09-CV-156-Y, 2010 WL 3033891, at *12 (N.D. Tex. July 2, 2010); *see Kane*, 731 F.2d at 1220. "To establish prejudice, a claimant must show that he 'could and would have adduced evidence that might have altered the result.'" *Brock*, 84 F.3d at 728 (citing *Kane*, 731 F.2d at 1220).

In this case, the ALJ found that Seveland suffered from the mental impairments of depression or bipolar disorder and "Rule/Out PTSD" but that none of her impairments or combination of impairments equaled an impairment listed in the Listing. (Tr. 16.) In making this determination, the ALJ relied on, *inter alia*, the following evidence: (1) records from a psychiatric stabilization unit in February 2003 indicating Seveland was treated for depression and severe PTSD with no evidence of psychosis and not at levels indicative of bipolar disorder (Tr. 16); (2) records

7

from March 2005 through January 2006 at Red Rock Behavioral Health Service showing Seveland was treated for depression, anxiety, anger, and a "diagnosed mood disorder NOS" (Tr. 17); (3) treatment records from February 2008 through December 2008 showing Seveland was suffering from anxiety and had "proposed a new diagnosis of bipolar disorder" (Tr. 17, 21); (4) a consultative psychological evaluation dated July 2005 in which Robert Danaher, Psy.D. ("Danaher"), diagnosed Seveland with "bipolar disorder, benzodiazepine dependence, in remission by history, and on a Rule-Out basis, PTSD" (Tr. 17-18); (5) SAMCs' opinions that Seveland's impairments did not meet or equal an impairment listed in the Listing (Tr. 19; see Tr. 38-39); and (6) Seveland's testimony (Tr. 19-21).

In determining that Seveland was not disabled, the ALJ gave significant weight to the objective medical findings and clinical signs reported by Danaher but found Danaher's assessments that (1) Seveland was not capable of managing her own finances and (2) Seveland was not expected to improve significantly over the next twelve months were not substantiated by the objective medical evidence. (Tr. 18.) In addition, the ALJ gave "significant weight . . . to the objective medical findings and clinical signs in treating progress records, which reveal a history of alcohol and Xanex abuse, allegedly in remission, with depressive or bipolar disorder, and Rule/Out PTSD, improved on medication when symptomatic, as corroborated in the objective medical findings and clinical signs of the consultative examiner." (Tr. 18.) Furthermore, the ALJ relied on the sparse evidence of medical treatment for mental impairments between 2003, 2005, and 2008 in making his determination that Seveland was not disabled. As to Seveland's claims of non-exertional impairments, the ALJ stated, "Although the claimant alleges a dual personality, multiple psychological evaluations provide no objective medical evidence or clinical signs substantiating

8

such allegations, nor any related diagnosis." (Tr. 20-21.) In addition, the ALJ held that Seveland's testimony was not credible as she was able to take care of herself and children under her supervision, perform household chores, drive, and go shopping. (Tr. 19-21.)

Prior to the ALJ's April 1, 2009 decision currently being reviewed by the Court, the Appeals Council remanded the case on October 28, 2008 to the ALJ. (Tr. 250-53.) In its order of remand, the Appeals Council found that the record was unclear regarding the nature and severity of Seveland's mental impairments. The Appeals Council, noting that there was no evidence of Seveland's mental condition past December 15, 2005, ordered the ALJ to obtain additional evidence concerning her mental impairments.

After the Appeals Council issued its order on October 28, 2008 remanding the case to the ALJ, the only new relevant evidence in the record regarding Seveland's mental impairments dated after December 15, 2005 are the following: (1) medical records from Belt Line Health Clinic ("Belt Line") dated from February 2008 through January 2009 (Tr. 269-73); (2) two PRTFs dated January 4, 2007, both signed by Shadid; and (3) Seveland's testimony at the January 27, 2009 hearing before the ALJ (Tr. 304-25). The records from Belt Line indicate that Seveland sought treatment, *inter alia*, for anxiety and sleeping problems and was diagnosed with general anxiety disorder, insomnia, depression, fatigue, and bipolar disorder. (Tr. 269-273.) They also show that her doctor recommended that she obtain psychological counseling. (Tr. 271.) Furthermore, in the PRTFs, Shadid opined that there was insufficient evidence to make a disability determination from January 2003 through January 4, 2007. (Tr. 209-35.) Specifically, Shadid stated, "Psychological evaluation was need[ed] to determine disability and examinations were scheduled twice. The [claimant] failed to keep appointments, therefore there is insufficient evidence to make a decision of disability." (Tr.

9

235.) In addition, at the hearing before the ALJ on January 27, 2009, Seveland testified that she had an "other side" of herself, which she called Samantha, that often protected her and caused her to get fired from jobs. (Tr. 313-16.)

Based on the facts of this case, the Court concludes that the ALJ did err by failing to order a consultative examination to discharge his duty to develop the record. The Appeals Council, in its October 28, 2008 order of remand, recognized that the ALJ had, *inter alia*, a duty to further develop the record due to the lack of any evidence in the record dated after December 15, 2005 regarding Seveland's mental impairments. The evidence in the record dated after December 15, 2005, as discussed above, indicates that there continues to be insufficient evidence in the record regarding Seveland's mental impairments and raises a suspicion that, contrary to the ALJ's findings, Seveland likely does suffer from a severe mental impairment that may result in a finding of disability as to, at a minimum, Seveland's claim for SSI benefits.

However, the case will be remanded only if Seveland shows that she could and would have adduced evidence that might have altered the result. Seveland submitted new evidence to the Court that was not before the ALJ that shows she began receiving treatment in July 2009 from Mark Rider, Ph.D. ("Rider"), who diagnosed Seveland with bipolar disorder and dissociative identity disorder. (Pl.'s Br., Attach. 1.) This evidence supports Seveland's claims that she potentially suffers from a mental impairment that is more severe than that found by the ALJ. Because Seveland has met her burden, the Court concludes that remand is required so that the ALJ can fulfill his duty to develop a full and fair record in this case.

The Commissioner argues, *inter alia*, that remand is not required because "the agency had scheduled Seveland for two additional consultative evaluations, but that Seveland failed to keep

10

these appointments." (Def.'s Br. at 10; *see* Tr. 235.) The Commissioner's argument is, however, not persuasive because the two consultative evaluations that Seveland failed to attend were scheduled *prior* to the Appeals Council's October 28, 2008 order remanding the case to the ALJ. The Commissioner has not pointed to any evidence that the ALJ attempted to schedule a consultative examination at any time *after* the Appeals Council's order of remand. The Commissioner cannot use Seveland's behavior *prior* to the Appeals Council's order of remand to show that the ALJ complied with his duty to develop the record *after* the Appeals Council's order of remand.

Because the Court is remanding the case so that the ALJ can comply with his duty to develop the record, the Court will not consider the issue of whether the evidence submitted to the Court by Seveland after the ALJ's decision constitutes new and material evidence. The ALJ should consider such evidence on remand.

## II. RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings consistent with these proposed findings and conclusions.

## III. NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The Court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings,

conclusions and recommendation until November 9, 2010. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## IV. ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until November 9, 2010 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED October 19, 2010.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv